# EXHIBIT C

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between JAMES BERMAN, TRUSTEE (the "Trustee) OF THE ESTATES OF MICHAEL S. GOLDBERG and MICHAEL S. GOLDBERG, LLC (collectively the "Debtors") and JASON ROSS ("Ross") as of the Effective Date shown below:

**WHEREAS**, over the last twelve years, Michael S. Goldberg ("Goldberg") and his single member limited liability company, Michael S. Goldberg, LLC ("Debtor LLC"), operated a Ponzi scheme (the "Goldberg Scheme")[1]; and

**WHEREAS**, the Goldberg Scheme promised (and for a long time, paid) unrealistic and unbelievable rates of return of up to (and in some cases, exceeding) twenty percent (20%) per quarter, in purportedly risk-free investments involving either the purchase and resale of diamonds ("Diamond Deals") and the purchase of foreclosed business assets (such as structural steel, aluminum and other construction material) from Chase Manhattan Bank at prices supposedly low enough to allow Goldberg to resell those assets (usually within ninety (90) days of purchase) to large institutions at profit margins of up to one hundred (100%) percent (the "Chase Asset Deals").

---

[1] A Ponzi scheme is a fraudulent pyramid-type scheme named after Charles Ponzi. Cunningham v. Brown, 265 U.S. 1 (1924). In such a scheme, money from new investors is used to pay artificially high returns to earlier investors in order to create an appearance of profitability and attract new investors so as to perpetuate the scheme. See Bear Stearns Servs. Corp. v. Gredd., 397 B.R. 1, 8-10 (S.D.N.Y. 2007) (citing Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1088 n. 3 (2d Cir. 1995)); see, also In re: Unified Commercial Capital Inc. 260 B.R. 343 (Bankr. W.D.N.Y. 2001) ("A Ponzi scheme, as that term is generally used, refers to an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised larger returns for their investments. Initial investors are actually paid the promised returns, which attracts additional investors."). There is a general rule - known as the "Ponzi scheme presumption" - that such a scheme demonstrates fraudulent intent as matter of law because "transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors." Bear Stearns v. Gredd., at 8-10. See also Donnell v. Kowell, 533 F.2d 462, 770 (9th Cir. 2008), cert. den. 129 S.Ct. 640 (2008); SEC v. Resource Dev. Int'l, LLC, 487 F.3d 295, 304 (5th Cir. 2007); Armstrong v. Collins, 2010 Bankr. LEXIS 280 75*63 (S.D.N.Y. 2010).

**WHEREAS**, many (but not all) of the investors in the Diamond Liquidation Deals and the Chase Asset Deals were expecting to receive an annualized rate of return of over one hundred (100%) percent on an after-tax basis, in virtually risk-free deals;

**WHEREAS**, hundreds of investors invested funds with the Debtors based on these high rates of return on risk-free deals;

**WHEREAS**, when major investors began demanding full payment on their investments, instead of "rolling them over," the Goldberg Scheme became more and more difficult to maintain. Goldberg began making later and later payments while he tried to find replacement investors so that he could pay off those investors who were demanding their money. This created increased concern among large investors who, for understandable reasons, feared the worst in terms of the bona fides of Goldberg's transactions. This caused those investors to put Goldberg under increasing pressure and scrutiny;

**WHEREAS**, ultimately, Goldberg was sued in the fall of 2009 and his assets were frozen by a group of large investors whose contracts with Goldberg were never paid. In November, 2009, Goldberg turned himself in to federal authorities. At about the same time, those investors who had sued Goldberg and LLC for fraud joined together to commence the involuntary bankruptcy which resulted in the Trustee's appointment, in which capacity he brings this action for the benefit of all creditors of the estate;

**WHEREAS**, on November 18, 2009 (the "Petition Date"), certain petitioning creditors filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against each of the Debtors;

**WHEREAS**, on November 24, 2009, the Court entered the Order for Relief in the Debtors' cases (the "Bankruptcy Cases");

**WHEREAS**, by Orders dated January 11, 2010, the Court confirmed the election of James Berman as Chapter 7 Trustee in the Bankruptcy Cases;

**WHEREAS**, Ross invested $75,000.00 in the Goldberg Scheme and received $108,000.00 from the Goldberg Scheme as set forth on Exhibit A;

**WHEREAS**, Ross entered into a written contract with "Michael S. Goldberg representing Acquisitions Unlimited Group" using a one page Business Investment Agreement form attached hereto as Exhibit B;

**WHEREAS**, Ross's returns on the investment were to be 20% per quarter or an annual return of more than 100% per annum;

**WHEREAS**, as a result of the Goldberg Scheme, Ross received all of his original investment plus $33,000.00 in false "profit" (the "False Profits");

**WHEREAS**, there are no real profits in the Goldberg Scheme because the funds received from investors were never used for investment purposes and were used almost exclusively to pay off other investors as Mr. Goldberg has admitted to the Trustee and others;

**WHEREAS**, Ross has represented to the Trustee that he had no knowledge that the Goldberg Scheme was a Ponzi scheme until after Goldberg's arrest;

**WHEREAS**, Ross has represented to the Trustee that, before Goldberg's arrest, he was not aware of any facts which would indicate that the Goldberg Scheme was a Ponzi scheme other than the "too good to be true" rates of return paid by the Goldberg Scheme; and

**WHEREAS**, Ross has represented to the Trustee that he received no compensation from Goldberg or other investors in connection with the Goldberg Scheme, other than the amounts set forth on Exhibit A and that they have never received any payment or commission in return for persuading any other investor to invest in the Goldberg Scheme;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and based upon the <u>accuracy</u> and <u>truth</u> of the representations made by Ross to the Trustee, and with the intent to be legally bound, it is agreed between the undersigned as follows:

1. **Payment Terms**

Ross shall return $40,000.00 which he received from the Goldberg Scheme (the "Returned Funds"). The Returned Funds shall be in the form of a bank or certified check payable to James Berman, Trustee of the Estate of Michael S. Goldberg, LLC. Payment of the Returned Funds shall be made within fourteen days of the Court's approval of this Settlement Agreement.

2. **Payment Basis**

The payment of the Returned Funds represents a payment of all of Ross's False Profits <u>plus</u> a disbursement to the Estate of a portion of Ross's original investment in the Goldberg Scheme.

3. **Ross's Representations**

This Settlement is being entered into based upon Ross's express representations that: (1) he was never actually aware (despite any suspicions he may have had) that the Goldberg Scheme was a Ponzi scheme prior to the Petition Date; (2) he never received any payment or commission in return for persuading any other investor to invest in the Goldberg Scheme; (3) he received no compensation, directly or indirectly, from the Goldberg Scheme, except as set forth on <u>Exhibit A</u>; and (4) that he had no knowledge concerning any fact which would have placed him on inquiry notice that the Goldberg Scheme was a Ponzi scheme, other than the outlandish rates of return paid under the Goldberg Scheme. Ross further represents that no entity owned or controlled by him and no family member or Ross insider as defined in 11 U.S.C. § 101(31) has

received any payment or benefit, directly or indirectly, from the Goldberg Scheme except as set forth on Exhibit A. If, at any time, these representations are determined by the Court, after notice and a hearing, to be materially false, the release set forth in Paragraph 4 shall be null and void.

Ross has delivered to the Trustee fully completed and executed *Sworn Representations And Financial Disclosure Statement In Contemplation Of Settlement With James Berman, Trustee For The Chapter 7 Bankruptcy Estates Of Michael S. Goldberg And Michael S. Goldberg, LLC* (the "Sworn Representations/Disclosures"), which have been bates-stamped. The Trustee will review the Sworn Representations/Disclosures prior to the first date set for a hearing (the "Initial Hearing Date") on the Ross Rule 9019 Motion and shall approve or reject them on or before that date. The Trustee shall communicate his approval/rejection of the Sworn Representations/Disclosures immediately to Ross. In the event the Trustee rejects the Sworn Representations/Disclosures, the Trustee shall not be bound by this Stipulation/Order and shall not be obligated to prosecute the Ross Rule 9019 Motion.

4. **Trustee's Release of Ross**

In consideration of the payment of the Returned Funds, the Trustee, hereby expressly releases any and all claims that he may have against Ross, and his heirs, devisees and assigns ("Releasees") relating to his investment in the Goldberg Scheme, including any and all actions, causes of action, rights, claims, costs, liabilities, damages, losses, expenses, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, expenses, executions, compensation, or demands whatsoever against said Releasees, the Trustee ever had, now has or which he shall or may have in connection with the transactions set forth on Exhibit A.

5. **Waiver of Claim**

Ross hereby waives any right that he may have to assert a claim of any sort against the Trustee, the Debtors or their Estates.

6. **Court Approval**

The parties agree that this Settlement Agreement and the release herein, being full and final, except for a breach of Ross's representations, is subject to approval of the United States Bankruptcy Court and the Trustee shall promptly submit this Settlement Agreement for such approval pursuant to a Motion to Compromise the Trustee's claims against Ross under Rule 9019 of the Federal Rules of Bankruptcy Procedure. In the event the Court does not approve this Settlement Agreement, this Agreement and all provisions herein shall be null and void.

7. **Other Provisions**

   A. **Governing Law**. The validity, effect and construction of this Settlement Agreement and any obligations undertaken pursuant hereto, and any dispute relating or arising from the negotiation and execution of this Settlement Agreement, shall be governed by the laws of the State of Connecticut, without regard to the conflicts of laws provisions. The Trustee and Ross consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Connecticut to adjudicate any dispute arising under or related to this Agreement.

   B. **Breach**. The parties understand, acknowledge and agree that this Settlement Agreement may be used as evidence in any subsequent action or proceeding in which either party alleges a breach of this Settlement Agreement or asserts any claims inconsistent with its terms. In the event a party breaches this Settlement Agreement, the party successful in enforcing

this Settlement Agreement shall be entitled to all costs of collection including, but not limited to, reasonable attorney's fees.

C. **Attorney's Fees, Costs and Expenses**. The parties shall each bear all of their own attorney's fees, costs and expenses incurred in the negotiation and execution of this Agreement.

D. **Consultation with Counsel**. Ross acknowledges that he has consulted with Attorney Harold Rosnick in connection with this Settlement Agreement. Ross hereby acknowledges that he has not received or relied upon any advice, legal or otherwise, of the Trustee or his counsel in entering into this Settlement Agreement.

E. **Counterparts**. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

F. **Titles**. The titles of the paragraphs of this Settlement Agreement are inserted for convenience only and shall not affect the meaning or construction of any of the terms of this Agreement.

G. **Entire Settlement Agreement and Amendment**. The parties understand, acknowledge and agree that this Settlement Agreement contains and constitutes the entire Agreement and understanding among the parties, that no other representation, promise or covenant of any kind has been made to induce or cause any of the parties to execute the Settlement Agreement, and that all the understandings and agreements of the parties are embodied and expressed herein. The parties also agree that this Settlement Agreement may not be amended, except in a writing signed by each and every one of the parties to this Settlement Agreement.

H. **Effective Date**. This Settlement Agreement shall not be effective until the "Effective Date", which shall be the date on which this Settlement Agreement is approved by the Court pursuant to a final order. This Settlement Agreement and the compromise reflected herein, once effective, shall remain effective, enforceable and binding on all parties notwithstanding the dismissal or conversion of the Bankruptcy Case to another Chapter of Title 11.

I. **Waiver**. The failure of any party to insist upon strict adherence to any term of this Settlement Agreement on any occasion shall not be considered a waiver thereof or deprive that party of the right thereafter to insist upon strict adherence to that term of any other term of this Agreement.

J. **No Admission**. This Settlement Agreement is not an admission of liability by any of the parties and shall not be construed as such in any subsequent proceeding.

8. **Assignment of Claims**

As further consideration for this Agreement with the Trustee, Ross hereby irrevocably assigns to the Trustee any and all Claims as such term is defined in Section 1015 of the Bankruptcy Code of any kind whatsoever that he may have concerning or in connection with the Goldberg Scheme against any parties other than the parties to this Agreement, including but not limited for all causes of action against third parties for any loss, expense or damage suffered by Ross in connection with the Goldberg Scheme. Ross agrees that, if necessary, he will cooperate in the proceeding of such claims, including executing a separate assignment as and when necessary. This assignment is conditioned only upon the approval of this Agreement by the Bankruptcy Court.

**IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound, have duly executed this Settlement Agreement in multiple originals as of the last date shown below.

DATE: _____, 2011        JAMES BERMAN, TRUSTEE OF THE ESTATES
                                  OF MICHAEL S. GOLDBERG AND
                                  MICHAEL S. GOLDBERG, LLC

                                  _____/s/ James Berman, Trustee_____

DATE: 1 – 7, 2011                 _____/s/ Jason Ross_____
                                  Jason Ross